We'll hear argument next in Case 11-1518, Bullock v. BankChampaign. Mr. Byrne. May it please the Court, this case presents one of the most confounding questions of bankruptcy law, and that is the meaning of defalcation, which is found currently in Section 523A4 of the Code. It is an undefined term in a bankruptcy code with more than 100 defined terms, and it has been in the Bankruptcy Code or Bankruptcy Act, excuse me, since 1841 and in every version of it since then. There is no plain, contemporary, ordinary meaning that we can resort to with respect to interpretation of the word because it is not in common use. This case presents both the question of the action required to establish defalcation and the mental state that must accompany it. And on the mental state issue, the circuits have split in probably three ways at least. The Eleventh Circuit here held that Petitioner committed defalcation by acting recklessly and affirmed on summary judgment a summary judgment order that was granted for the petitioning creditor. Alito, before we get to the various candidates for applicable mental state, if there is one, could you tell me what this mental state applies to? Does it apply to facts or does it apply to law? Your Honor, it should apply to both, but it applies to the act must be accompanied by a culpable mental state. We will argue that and have argued that mistake of law can be relevant to the knowledge that the actor has when he commits the act. And we have argued that in this particular circumstance, particularly involving dischargeability, that a mistake of law ought to be permissible in responding to the claim of defalcation. Well, what we have here is, I think everybody agrees, that these transactions were not authorized, and they were self-dealing to the extent that there was a benefit to Mr. Bullock from the investments that were made. So what, in addition to being unauthorized and self-dealing, which the government tells us should be enough to make for a defalcation, what else, other than that it was not authorized and that it was self-dealing? Your Honor, we believe that a showing of extreme recklessness at least is required as to the self-dealing. And so we have advocated for the first and second circuit standard, which requires either extreme recklessness or conscious misbehavior by the actor. It's a trustee who is taking, borrowing against the cash value of the life insurance, making an investment for the benefit of himself and his mother, getting profit from that investment, and not sharing it with the other siblings who are also. So what more than, I mean, he did that all advertently. Well, Your Honor, let me go back to the question of first, were the loans authorized? Now, this case, the finding of defalcation here is based entirely on the two Illinois court orders and collateral estoppel. And the Illinois court specifically reserved the question of whether the loans were authorized. But let me put that aside, please, and answer your second question. And what sets this case apart, what at least creates a factual question on whether Mr. Bullock committed defalcation, was what was his – what was the overall transaction. This is a family trust. It was created by his father, involving his father's life insurance policy. There is uncontradicted evidence that he did not know that making a loan to his mother at his father's request would somehow run afoul of the law more than a decade later when this all came to court. So we say, Your Honor, that there is at least a factual question that would have entitled him, should have entitled him to a trial on the question of the mental state that accompanied defalcation. But what about the two other transactions which were not done at the bidding of the father? Well, Your Honor, they were done at the bidding of the mother, and also they were – they went into the family business. These are two loans that went into the business created by the father and the mother, the garage building business. That's where the proceeds went. And so it would not – it would have been a surprise, we say, to the average person to learn that there was a legal problem with those loans. Well, I mean, it's often the case that children don't want to go into the family business, and it's often the case that some of them do and some of them don't. And the idea that one of the children who wants to put the money back in the family business is, you know, we wouldn't think that was wrong when the other children want to take the money out or put it somewhere else, that's not at all unusual. Well, it's not unusual to have some sort of conflict about that, Your Honor, but the record is very limited in this case as to what the preferences of the others were. It is – it seems clear that consent was not a part of that. Their preference is that they wanted a piece of the action. They still do. That's a – that's a preference. They want the profits from that investment. Whether they're entitled to it is a different issue. That position seems clear now, Your Honor, that back when – recall, these loans were made, please recall, in the 80s. Without the last one. Kennedy, I assume the other children did not have an interest in the business, but just the trustee and the mother did? Or is that clear from the record? That is not clear from the record, Your Honor. I think I know the answer to that question, but it is not on the record in the case. So the case is not clear from the record. Could you go back, please, to Justice Alito's question? I don't understand the answer to that. That is, I don't understand. And it's just something I don't understand. I'm not saying it facetiously. I don't understand the relationship of mental state to the issue. I mean, I didn't think there's any doubt here that the individual, your client, knew what he was doing. He knew for a fact that he's taking money from the trust. He knew it's giving it to its mother. He knows where it's going. And he knows it was later paid back with 6 percent interest. So you don't have to assume extreme recklessness. He knew it. Now, what he didn't know was that that was unlawful. And therefore, if I look at the accompanying things, embezzlement, larceny, fraud in the trust, I don't think any of them require a knowledge that what you're doing is unlawful. So if I try to do or do that, I don't think you can be convicted of embezzlement while misunderstanding the law of embezzlement. You can be convicted of larceny, the same. And as far as I know, a person to commit fraud lies, knows it's material, knows et cetera, but he doesn't have to know there's a law against it. And so if I do what Justice Harlan was doing and comparing it to the other three, it looks as if you don't need to know that what you're doing is against the law, where you commit defalcation. Now, that, I think, is what Justice Alito was driving at. And I'd like to hear an absolutely clear answer on that. Let me try to give it such an answer. The first, with respect to larceny, embezzlement and fraud, a mistake of law is admissible where it negates the scienter or the mental state that. But I didn't think there is any respect here in which admissing mistake of law would negate the mental state as to having taken money from the trust, used it in the family business, and then paid it back, which I take it are, we assume, which is a different question I have. But for present purposes, we are assuming that that's sufficient for defalcation. Is that right? Where does it negative the intent in respect to what happened? Well, Your Honor, the knowledge of the law, knowledge of wrongdoing, I think, is what you're asking. Where does that come into this? And it comes into the question of, A, he didn't have it, and, B, the question becomes, was it extremely reckless under the scienter standard that the First and Second Circuits followed? It had nothing to do with recklessness. He did these three things knowingly. That is a stronger mental state than recklessness, not a weaker one. Well, Your Honor, but he did them without knowing that they were unlawful. So we're back at the same question, and I'm now assuming you have no answer to the question, because there is none. Well, Your Honor, in many instances, not many, but in some instances, the Court has held that not knowing that a practice is unlawful is a defense to a charge of a crime. My problem is the following, which is, let's assume he had taken the money and lost it, and he never repaid it. What does it matter whether he thought he could take the money or not? I thought the very basic definition of defalcation in every dictionary of the time and forever, one of the three definitions, has always been, did you cause a loss to the trust? Why does mental state matter at all, is my bottom line. I think that your stronger argument is that loss to the estate, or the one that you have to can direct your attention to, is what is the loss to the trust. But what does it matter whether I intended to lose it or not if I wasn't entitled to lose it? Well, Your Honor, the question would be whether or not on the mental state, and I'll get to the actus reus element of this quickly, but as to the mental state, if the mental state is not culpable, then it seems entirely inconsistent. Well, that's Justice Breyer's point, which is, if you took the money and lost it, what does it matter? You took it. Unless you were drugged and didn't know that you were taking the money and somebody else forced you to, and there's some sort of duress defense, some outrageous question, isn't the issue the one that Justice Breyer came to? If you're a fiduciary, why should an excuse of ignorance of the law ever save you when you are required to exercise the highest protection of the trust? Well, Your Honor, of course, it does not save you from liability. Our issue here is dischargeability, which is a question. Why should you be discharged if you took, if you knowingly did an act, the actus reus, not with its concomitant mental state? You intended to take the money. Well, Your Honor, because for dischargeability purposes, because of Gleeson v. Thaw and the rule that bankruptcy discharge exceptions are confined to those plainly expressed, doubts are resolved in favor of the debtor. And if you look at the other requirements for exceptions to discharge in Section 523a, you see a high level of culpable conduct. For example, in Geiger, the Court held that reckless torts do not amount. Yes, yes, but you see, should I have to write the opinion in this case, I would have to deal with this issue. And I would have to say something about it. And as soon as I look at the other words, those are words like embezzlement, larceny, and fraud. Now, elsewhere in the U.S. Code, where those are crimes, ignorance of the law is not an excuse. It often is an excuse where, in fact, it's a tax violation or some other technical violation. So I would have to explain why the word defalcation, when linked to those three, is being treated differently. Or I'd have to say Congress used words which never have ignorance of the law as an excuse and meant them differently. Each of those is pretty hard to say. Well, Your Honor, you're alluding to Cheek v. United States and Ratzliff v. United States, the cases in which ignorance of the law, as an exception to the general rule, was found to be a defense in those cases. And what you had in those cases was a complex legal regime. You had the tax laws, and then you had the anti-structuring statute. And here we say that trust law in and of itself is a complex enough legal regime that a mistake of law at least ought to be admissible not for liability, but for establishing bankruptcy. Breyer. I have one other question on a different subject that may be more helpful to you or not. I think of defalcation as the individual who has defalcated shows up in Rio with two suitcases full of money. And it seemed to me, if you look at the root of the word, it consists of diminishing, taking a sickle and cutting something down. And therefore, it did seem to refer to an instance where you take the corpus or money belonging to the trust, now it becomes ambiguous, and you run off with it. Is there anything you would like to say about that? Yes, Your Honor. I would like to say that defalcation requires a shortage in accounts at the end of the day. And so there must be, if it's a trust, there must be some res missing when the trustee is called to account. But there is a shortage of accounts at the end of the day. Just a question of what day it is. When he takes this stuff, and it's a lost opportunity, it's either viewed as a lost opportunity or an increase in the risk to the beneficiary, and that's a loss to them at that point. The fact, I mean, it's like a bank robber giving back the money. There's no loss to the bank, but it's still a crime. Well, Your Honor, the definition of the word misappropriation in 1978 from the Bankruptcy Act, the definition of misappropriation is that misappropriation is a loss to the trust that are on an interim basis, that do not cause a loss to the trust and are never accounted for, is not the kind of action or act that should result in an exception to discharge. But if you look with respect to defalcation at the definitions at the time, the definitions that were available in 1841, as I believe Justice Breyer has done, the definitions you get are, for example, in Webster's 1828 dictionary, the act of cutting off or deducting apart. And the origin of the defalcation exception, and I believe the amici for the Respondent are correct in this respect, was the Swartwout scandal in 1838, when one Samuel Swartwout, who was the Director of Collections for the New York Customs House, which was a substantial part of the Federal budget at that time, was found, after he departed the country, to have $1.2 million missing from his accounts. And that was referred to as a defalcation at the time, and it's quite reasonable to assume that's how it ended up in the statute. So the loss of res there, the loss of funds to which the fiduciary is responsible for collecting at the time that he turns over his office, because this really originated with public officials, is the relevant time. Kagan.   Kagan. Kagan. Kagan. Kagan. But I guess the question is, how do you measure this loss? I mean, if you take money away and then you give it back, or even if you give it back with 2 percent interest or something, I mean, maybe if that money had remained in the trust, and I realize that this is a strange trust, but we have to think about other kinds of trusts. If that money had remained in the trust, there would have been a profit to be made from that money. And, you know, it's not a – if you say, well, I gave it back, well, yes, but if you had just left it there, you would have had that money plus all the money that that money earned. And so you're saying that there was never any money taken from the trust that didn't wind up with the trust at the end of the day. Correct, Justice Kagan, but here there was never any money taken from the trust that didn't wind up with the trust at the end of the day. The evidence is that the net policy value on the day Mr. Bullock unwittingly became a trustee in 1978 was the same as when he, at the end of his tenure, became a trustee.    trust at the end of the day. What about the profit from the transactions, the profit that he made? Yes, he paid back everything with interest, but in addition to that, according to the Illinois court's judgment, there was a profit that he made that he didn't put back in the trust, that he didn't put in the trust. He was charged with having profited with respect to one or more of the loans, Your Honor. A quarter of a million dollars in all. That's correct, Your Honor. And that did not go back into the trust. It did not. As it should. Doesn't the trustee have to disgorge whatever he makes by improper use of the trust funds? He does for liability purposes, of course, Justice Scalia. But here, the question is whether there's a bankruptcy defalcation, and that's a question of Federal law. May I ask you a question that is not a technical bankruptcy question? But the objective of filing for bankruptcy was to get rid of this judgment debt, this Illinois judgment debt, right? Yes, Your Honor. And the Eleventh Circuit said, you know, we're really sympathetic to that, but the problem is that the bank would not let you sell the collateral. You could sell the collateral and you could pay off the loan, and you wouldn't need to declare bankruptcy. Did you bring such a suit, the suit that suggested the bank was the culpable party here by not letting you sell the property, which would have enabled you to pay the debt? That action has not been brought, Your Honor. And in that action, let's say it were brought today, it could do nothing to relieve Petitioner of the judgment of the Eleventh Circuit and the lower courts here that he has a debt that is a substantial debt that is accepted from discharge. He could continue litigating, perhaps, if he has the resources, in Illinois for many more years, perhaps. Sotomayor, give me your best answer to the rule that we should write, okay? Forgetting that I don't accept that you need a mental state, okay, let's go to just the loss issue. If I agree with you that you need to prove a loss, this is a very unusual trust because the measure of what the trust rate should be is fixed. It was the amount of the trust plus the fixed interest, essentially. This is a very unusual trust. In the norm, the trust just says to the trustee, invest prudently. And the trustee self-deals by taking the rest out, puts the investment in his or her own name, and takes the profit. In that situation, how would you measure the loss? In the normal self-dealing where the trustee just has to invest prudently and is depriving the trust of that investment value, would you say in that situation that the loss is measured by the loss opportunity? Because there is a difference between what the trust loses and the gain that the gain has to be disgorged. Are you separating out those two things, and how are you separating them out, and how would I – how would we write, the Court write this opinion to give loss meaning? What's the meaning you want to give it? Your Honor, the loss to the trust should be measured by the economic loss to the trust between points A and point B, and it's as simple as that. And, of course, here there wasn't a loss to the trust. As you point out, it's an unusual situation perhaps. But, of course, life insurance trusts and other kinds of trusts that present this situation are not. Sotomayor So under your theory, the profit to the trustee is never a measurement. The profit to the trustee would not come into play. It could come into play for fraud. It could come into play for embezzlement. It could come into play if the mental state that we argue for is otherwise met. Assume that that is distasteful, because for all the reasons the government argues in its amicus brief, the idea that a trustee could self-deal is the height of a breach of fiduciary duty. So give me something that would win your case without upsetting the fact that defalcation somehow should in the norm include something as egregious as self-dealing. You don't think your guy did because he didn't know, but let's assume the worst case. The guy knew. Well, for the worst case, for that worst case, Your Honor, there is embezzlement in the statute. So if a, if someone comes into possession of property and misuses it and does so with fraudulent intent, it sounds like here, then there is a, an embezzlement can be established under the statute. Mr. Barron, I wasn't finished asking you about the background of this. It seems the simplest thing. If the bank is the culprit, then why not go after the bank and then get the money, which would make the Chapter 7 unnecessary? Your Honor, there is a good bit not in the record, and I presume you want me to stick to the record in responding, and there is no real explanation for that. There is in the record a consistent track of Petitioner trying to get the bank to sell the collateral in order to pay the debt off over time, and with an urgency to it because the collateral was deteriorating in value. But beyond that, there is not anything else in the record about the practicality or availability of the remedies in the Illinois court. But it was what the Eleventh Circuit thought was the solution to this problem. It was, Your Honor. And were they wrong in? As a practical matter, Your Honor, yes, and also as a legal matter, because the Illinois courts cannot set aside the order here accepting the debt from discharge. The only agenda potentially left for Petitioner would be litigation in the Illinois courts against the trustee to create some sort of a judgment that might be used in some way to ameliorate the effect of the bankruptcy court's judgment. But he still has basically been consigned to permanent insolvency the way that this judgment now sits. The briefs, the briefs on your side of the case say, well, you know, there's a series of words here, fraud, defolcation, embezzlement, larceny. But really, fraud and defolcation are defined in a further way than where embezzlement and larceny are not. It's a fraud or defolcation while acting in a fiduciary capacity, comma, then embezzlement and larceny. So I'm not quite sure it's fair to say that all four words must be consulted for the use of generis because fraud and defolcation are qualified by in a fiduciary capacity and then a comma. That is correct, Your Honor, that that's the way that this particular version of the Bankruptcy Act is set up. In the past, however, in Neal v. Clark, in an important decision by this Court in 1870 and 1878, the Court held that fraud should be construed to require fraud with moral turpitude because of the presence of embezzlement in the 1860s. Yes. In that respect, I think the word fraud gives you some assistance in arguing your case. Thank you, Your Honor. Unless there are further questions, I'll reserve the remainder of my time for a vote. Thank you, counsel. Mr. Bensinger. Mr. Chief Justice, and may it please the Court. The Petitioner's act of self-dealing was a reckless breach of his fiduciary duty of loyalty and was therefore a defolcation. And if there is a finding of recklessness in the State court? No, Your Honor. There was not a finding of recklessness. The State court simply found that the debtor engaged in self-dealing, that he used trust assets for his own purposes and thereby created a split, a conflict of interest between his interest and the interest of the trust. The moment that he made those loans, there is an absolute certainty that there would be a conflict of interest. And a reasonable person, a reasonable trustee in the Petitioner's position would not have made those loans because the risk was so high, nigh on an absolute certainty that there would be this conflict of interest. And that is when the harm occurred, at the moment that he made the loans, Your Honor. So you agree? Is there an embezzlement proven if you show recklessness or do you need a further criminal intent? Generally speaking, Your Honor, embezzlement does require some sort of specific mental intent, an intent to deceive or to defraud. But defolcation does not require that same mental intent. And that's borne out by the history. Well, of course, that's one of the things we're arguing about here. I don't think that's conceded. No, Your Honor. It's certainly not conceded, but it's borne out in the history of the Bankruptcy Act. Defolcation was first added to the Bankruptcy Act in 1841. And it was simply an exception to discharge for defolcation. There was no mention of fraud. There was no mention of embezzlement. There was no mention of larceny. It wasn't until 1867 that Congress, in the Bankruptcy Act of 1867, that Congress added an exception to discharge for embezzlement and for fraud. And what's this? Alito, you think recklessness is required. I'm sorry, Your Honor? You think recklessness is required. Yes, Your Honor. Recklessness is required. That is an objective act. Recklessness as to the law, as to what the law requires of a trustee. Recklessness as to the law, correct, Your Honor, but also as to the act. This was a reckless act. Oh, yes. But wait, wait. You say this — wait.  I mean, there is no doubt here, I agree with you, that as far as the act is concerned, it wasn't just reckless, it was intentional. You don't have to worry about that one. Thus, Justice Kennedy's basic question, I'd like to hear your answer to. I thought I might have come from the other side, but you concede, I take it, that there has to be an element in which the person not only knows what he's done, but that he does it with an element of moral turpitude, i.e., he knows that the law forbids it, or, or — now, are you conceding this? And then fill in the blanks, or. No, Your Honor, I apologize if I misspoke, in that all that is required is an intent to do the act. And that's what — All right. Then if that's your position, what do you say to what Justice Kennedy said, add in Justice Harlan's comment, that embezzlement and larceny are set off? These two concern fraud and defalcation in respect to the trust. There is a case of this Court that says fraud in respect to the trust requires an element of moral turpitude. That suggests a knowledge that what you are doing violates the law. And if we read in peri materia, we get the same kind of requirement for this, indeed more so. Indeed, you just conceded it existed even in respect to embezzlement, which is outside the parentheses. Your Honor, fraud, like embezzlement, does require a specific mental intent, but defalcation does not. Defalcation— Why? By someone who commits it, in some circumstances, than would fraud. Your Honor, defalcation must mean something other than fraud. The statute says that— No, it means, for example, here, fine, okay, no fraud, but what you did was you took some money that belonged to the trust given by your father to help your mother. And your mother says, help me. And the brothers and sisters will benefit well, too, and so what — and you go to your insurance guy and he says, sure, no problem. And then, lo and behold, they did it. I mean, innocence just radiates from what the conduct was as described. But it's described like that, maybe, Your Honor. However, it was still a reckless act, Your Honor, in that a reasonable trustee— I don't understand. Where does this reckless act come from? Where do you get reckless act out of either fraud or defalcation? Your Honor, the courts have traditionally ascribed, most courts have said that defalcation does require some form of— Perhaps so. Where did they get it from? Your Honor, that's the genesis of this case. The court— What does it matter if the money is missing? What does it matter the reason why, in terms of recklessness or intent? You took the money, Justice Breyer and I both agree, you intended to take the money. So why are you adopting the need for recklessness, unless you're trying to avoid the second component that the other side's talking about, which is that you've caused a loss to the trust? Because that's where you have a problem here, where you have a problem, because there really is no loss to the trust in the traditional sense. Possibly in the traditional sense, there might not have been a loss, but there was a loss in the context of trust law, Your Honor. The Petitioner in this case used trust funds for his own benefit. Well, the problem is that, yes, there was a breach of the trust, but in terms of the terms of the trust, the trust got every penny that it would have earned if the money had not been taken. It got the trust plus the fixed 6 percent that the trust was entitled to. So it suffered no loss in its traditional sense. Maybe not in the traditional sense, but in the context of a fiduciary obligation, a trustee is not allowed to benefit from his position as trustee. Well, the trust – why are you giving away that it's not in the traditional sense? I think it's a loss in the traditional sense. The trust was entitled to whatever profit was made from the use of its funds. Correct, Your Honor. And he made a quarter of a million dollars that should have belonged to the trust. It's not enough to say, well, you know, I'll pay you 2 percent interest or whatever the, you know, the going rate of interest was. He made $250,000, which should have been given to the trust. That's correct, Your Honor. And that is what the Illinois State Court found. And that is borne out also by the other exceptions to discharge in Section 523A4. If a fraudster commits fraud, he doesn't just remedy that by paying back what he took. He has to return all of the profits that he paid. But the question here is not whether the trustee is liable. Yes, the trustee is liable.  Correct, Your Honor. And if you look at the other words in this list, fraud, embezzlement, and larceny, those are bad acts. There's a degree of moral culpability involved. And maybe there are people who commit fraud, embezzlement, and larceny and don't realize that it's illegal, but there are not many. It's commonly understood that those are bad. So in a very impressionistic sense, there's a difference between that and the kind of conduct that's presented to us here. But do you think that's irrelevant? It is irrelevant, Your Honor, because a reasonable trustee would not act in this way. A reasonable trustee would know that the moment he makes loans to himself, he has created a conflict of interest between himself and his trust. But what about a reasonable trustee who just invests very imprudently, an unreasonable trustee who invests very imprudently? Any reasonable trustee would realize that investing in, you know, in the widget factory, totally unrelated to him, is a really bad idea and the money is lost there. What about that trustee? Is that a defalcation? If it's unreasonable, it would be, Your Honor, because Is it before we leave this, conduct? I mean, I understand. I was painting there a picture of there being innocent. But we are in a court that this Court has described as a court of equity or akin thereto. Yes, Your Honor. One principle I used to learn was he who has clean hands can come into equity, but not anybody else. Now, we have two lower courts that are saying your client has pretty dirty hands, or at least they don't understand it. That this other client has tried to get them to sell the property. But they write, the properties are abandoned and uninsurable. Even though Mr. Bullock produced a buyer, they won't sell it. And so do you have clean hands, not you yourself, you didn't take the money and you do not have dirty hands, all right? But did your client here, does he lack clean hands because two courts have said he should have just sold his collateral and he would have gotten the money and saved everybody a lot of trouble? No, Your Honor. Because? Because, first of all, the Bankruptcy Court never made any specific finding of facts. Those were allegations that were included in the record at the district court in certain cases. Could we remand it so they could? No, Your Honor, because the Petitioner had every opportunity to bring those facts into evidence at the Bankruptcy Court, and he did not. There are facts outside the record, as there are on both sides, with regard to this issue, why the trust would not allow the subsequent sale. But it does go back to an important point, and that's that the Petitioner did have and retains today an opportunity to go back to State court and seek a reduction in this judgment, should he so desire. A reduction in the judgment would reduce the debt. If there is no debt, then there is nothing for the trust to collect subsequent to this discharge or subsequent to the lack of discharge, as Respondent is requesting. So there's nothing in the record that shows why the Bank refused to release any of the collateral? No, Your Honor, there is not. That was not an issue that ultimately came before the Bankruptcy Court. The Bankruptcy Court made no finding of facts. There were only allegations on appeal to the District Court and to the Eleventh Circuit, Your Honor. However, to return back to the point concerning the required mental intent or the mens rea, both in the Petition and here this morning, the Petitioner has not been able to articulate exactly what mens rea is required. That is what mental intent is required. But the mental intent that he asked is that it be something greater than extreme recklessness, in effect. However, that cannot work in the Code because it would make other Code sections superfluous. Specifically, if the mental intent required were an intent to cause an injury, Section 523A6 of the Bankruptcy Code already accepts from discharge debts for willful and malicious injury. Well, a number of embezzlers, not all of them, many embezzlers, fully intend to pay everything back once things turn out all right, but there's still an embezzlement. But there is also a criminal intent at the time or a wrongful intent, even if you plan to pay it back. And it seems to me that you're standing very firm on the fact that defolcation means something different than fraud in the first clause or embezzlement and larceny in the following clause. It does, Your Honor. Defolcation, when it was first introduced into the Bankruptcy Act in 1841, had a known meaning. And that known meaning, at least according to the Oxford English Dictionary, is a monetary deficiency through breach of trust. That was from the other side. And the problem is, as your friend on the other side points out, that there's two problems with this. Number one, it's not consistent with the meaning of the other three terms in the statute. And two, it's not consistent with the idea that discharges should be freely given so that debtors can begin again. But, Your Honor, the subsequent inclusion of the terms fraud, embezzlement and larceny cannot retroactively modify or change the known definition of the word defolcation. This Court in Schrauber v. Northern Burlington considered two sections of or two statutes in the Securities and Exchange Act, section 14E and section 10B, section 14A, and section 10B was the first enacted statute, section 14E was subsequently enacted. Both statutes prohibited a manipulative type of transaction with regard to securities. Section 14E also prohibited a fraudulent act with regard to securities. This Court stated in that case, while it wasn't central to its holding, the Court did state that the inclusion of the term fraudulent in section 14E could not modify the understanding of the term manipulative. And the same logic applies here. The subsequent inclusion of the terms fraudulent and embezzlement and larceny cannot modify the known meaning, even if that known meaning has been lost, the meaning of the word defolcation. Kagan. Kagan. Mr. Bensinger, if I heard you correctly, you said that the definition was a monetary deficiency arising from a breach of trust. Is that – does that mean that you are conceding that there has to be a loss, a monetary deficiency? Bensinger. Your Honor, there was a monetary deficiency in this case. Whether there was or was not in this case, but you're conceding that there has to be a monetary deficiency according to the traditional definitions. Yes, Your Honor. For there to be even a debt, which is what the Bankruptcy Code discharges, there must be a monetary deficiency in this case, or in the case of a defolcation. And that is what this one. Are we fighting about the meaning of loss? That's really the question. I'm sorry, Your Honor? Are we fighting about what loss means? Your Honor, that is certainly an issue that the parties have contested in the briefs before this Court and in the courts below, whether there was a loss. And there was a loss. The State court recognized that there was a loss in the amount of $250,000. That judgment of $250,000 creates a claim. The Bankruptcy Code in section 101.5 defines a claim as a right to payment. So if he made nothing on the deal, it just turns out he got whatever the trust was getting under its interest rate and gave it back, there would be no defolcation because there would be no loss in the sense of a loss opportunity? There would be a defolcation, Your Honor, but there would be no debt in that case and that there would be nothing for him. I'm sorry. I understood your answer to Justice Kagan to be that you — there must be a loss. Right? Your Honor, there needs to be a loss for there to be a debt. Right. Does there have to be a loss for there to be a defolcation? No, Your Honor. If I'm inconsistent in that answer, I apologize. Don't — do not intend to be. There must be a loss for there to be a debt. For there to be a defolcation, that merely goes to the bad act, the act of, in this case, self-dealing. So taking the money out is sufficient for defolcation, even if it's brought back in full and even if there's no loss opportunity? Correct, Your Honor. That's not consistent with the original meaning of defolcation to which you are appealing. It's pretty clear to me that the original meaning is a cutting off, a failure to turn over money that was due. So are you appealing the original meaning or not? Your Honor — You're saying defolcation just means breach of trust. That's it? No, Your Honor. We're saying that in this case, the breach of trust, the self-dealing, was that cutting off of the asset that was brought in. And that's what made it a defolcation, no? Correct, Your Honor. Well, so then you say there has to be a cutting off. There has to be a loss for defolcation, not just for our debt, but also for the defolcation. Your Honor, at that point, there was a— Hey, why are you fighting that? You're going to have to prove the loss anyway. You say there is a loss. Your Honor, the loss in that case occurs — Your Honor is absolutely right. At the time that there is that cutting off, at the time that, in this case, the Petitioner used the trust assets for his own benefit. And then what's the loss? I mean, let's assume the trust is worth $1 million plus 6 percent, and every year they have in their coffer $1 million plus 6 percent. Your Honor— The only part they don't have is the extra money that the trustee made. But there is no cutting down of the size of the trust. At least that's an argument. Now, what's the answer? Because, Your Honor, the loss occurred. There was a loss in the amount of the loans that he took out, and that loss was compounded, if you will, Your Honor, by the Petitioner's failure to return the proceeds of those loans. Sotomayor, this is the unusual part of this trust, which is that by the terms of this trust, it was only going to grow at principal plus a fixed interest. Most trusts are not written this way. This is the highly unusual trust, where it never should have made more money. Because taking the Chief Justice's hypothetical, which is he had invested it and just gotten the interest due, why would there be a defalcation? What's the loss opportunity or the loss that you would have suffered? Your Honor, the loss that the trust suffered was that its principal was taken away. Was it invested by the trustee for his own benefit? Sotomayor, yes, but let's assume a different fact scenario, that he didn't make $250,000, that he happened to make just the amount of the interest required, and he paid all of that back, just as he did here. What would have been the defalcation under the Chief Justice's hypothetical? The defalcation there, Your Honor, would be that the trustee has split his interest, has created a conflict of interest, and that causes a loss. There might not be a monetary — a strict monetary loss at that time. Sotomayor, I've never heard of a defalcation that didn't result in some monetary loss. What would have been the monetary loss in the Chief's hypothetical? In that case, Your Honor, there would not have been a strict monetary loss in that hypothetical, had the — all the proceeds — had there not been any defalcation or any benefit that the trustee obtained from the investment and use of those funds. But there is still a loss, I mean, when you're investing, obviously, the return is part of it, but also the question is what risk you assume. And the trust would have suffered because during that period they were incurring a greater risk. That's one reason you set up a trust, so you don't — you protect people from that risk. That's correct, Your Honor. Thank you. Mr. Gannon. Mr. Chief Justice, and may it please the Court. No particular mens rea is inherent in the term defalcation or the structure of Section 523a.4. Unlike fraud, larceny and embezzlement. Each of those terms does have some mens rea associated with it. It is not, however, the willfulness requirement that my friend was invoking on the other side. There's no obligation under any of those that there be an intentional violation of a known legal duty. There are specific intents to defraud, but I think we know that this can't be — it can't have that mens rea because that would make it superfluous. That's what Judge Hand said in the Herbst decision, and that's what even the Second Circuit and the First Circuit recognized here, that they could not adopt the same mens rea, that it belongs with the other terms here. And I — Because. Pardon? Because. I mean, I thought defalcation is suppose that the person does pack his suitcases with the money, and he goes and shows up in rehab. I take it that would be defalcation. That isn't fraud. That would probably be embezzlement, and it would be superfluous in that sense. I think that the dictionary definitions, if you look at the dictionary definitions of defalcation that we quote on pages 10 and 11 of our brief, both the English dictionary definitions and the legal dictionary definitions, they basically take. But you didn't have the Latin definition, which I take it, from my colleague and was confirmed by my law clerks, come from medieval Latin, starting with a sickle and meant to cut down, to cut down, and that suggested reduction. We did quote the Samuel Johnson dictionary and the Webster's 1828 dictionary that have that meaning. If you look at the Oxford English dictionary definition, that was an obsolete meaning, and I think that it's quite clear that the meaning that Congress was invoking here is what is dealt with under Heading 5 in the Oxford English dictionary. And my friend quoted it earlier. It's either a monetary deficiency through a breach of trust by one who has the management or charge of funds, or — Well, monetary deficiency, again, isn't that a loss? But I thought that your position was that there didn't need to be a loss. Well, there are two questions there, and I think that one of the illustrative quotations that the OED uses for that very definition doesn't actually refer to a monetary deficiency, and neither do most of the other dictionary definitions. So I do think that there's probably an open question about what the purest meaning of the term defalcation, whether it requires a loss. Here, we do think that there is a loss. There's a loss in a very real and traditional sense. There's no doubt about it, that because the Petitioner took — engaged in self-dealing and made a profit with that — with the money that he'd taken out of the trust corpus and refused to return those profits to the trust, that is a loss to the trust, just as it would be had he taken the money and invested it in some great investment scheme, and — or he decided to bet it a frack. And he decided — Well, that's certainly true in an ordinary trust, but isn't there a real question as to this trust? Because if this trust would — the trustee shouldn't have been investing this in the first place. All that this trust was going to get was the principal plus a fixed income. I don't think that's a fair statement of the way this trust operates. It's not consistent with Petitioner's own arguments. Petitioner's argument in the State court and in the bankruptcy court, the argument that he says is the reason why there's no determination about whether this was an authorized use of the money under the trust instrument is that — that he was allowed to invest the assets of the trust. And so the way the courts and the parties have — have offered to lodge the trust instrument with the court, as I understand it, it's not otherwise in the record. But the point here is that he did — Sotomayor, did you just repeat what you said? I didn't — your voice turned. The last part I said, that the parties have offered to lodge the trust instrument with the court, but my understanding is that it's not in the record. But I don't think anybody has taken the position that the only thing that could ever be in the trust was the life insurance policy plus 6 percent. That's what I understood. So you're saying that's not the case? I believe that that is not the case, and that is not even consistent with Petitioner's own position in the State court where he said he was — he was taking this money and investing it in some alternative thing because he thought that would be safer than leaving the money with a life insurance company. And I think if I can go back to explaining why I think that this is a loss, and so I think that this trust is not as unusual or unique as you think it is, in part because we don't have the language of it in front of us. But secondly, I was trying to say that had he taken this money for an authorized purpose or not and decided he was going to go invest it, he had some baffo scheme, he had some friend who had a great stock tip, or he had a tip at the races and he was going to go down to the track and bet this money. And he made 1,000 percent, and he decided, well, you know what, had I not taken the money out of the trust, all I'd have to do is return. All I'd have to do is take a toll on the sense of having the 6 percent that I otherwise would have had. That would — everybody would understand that's a breach of his duty of loyalty. That's a defalcation. It is an injury to the trust. It is a loss in every relevant sense. And in addition here, the $35,000 that the State court awarded for attorneys' fees and costs is also another concrete loss to the estate. And this Court's decision in Cohen against De La Cruz, which was about non-dischargeability of a fraud judgment, of a debt for fraud, said that that debt for fraud included all of the legal liability associated with the underlying fraud. Sotomayor, there's two components of the award, the attorneys' fees plus the $250,000 profit. And you're representing to me right now that as a trustee he was entitled to invest that fund for the trust? And so there was a loss opportunity here as well? It's not that there's — it's not the opportunity loss. It's not the fact that the trust wasn't already earning the interest in the — vis-à-vis the insurance company as it otherwise would. Petitioner's position is that he already gave back the money that it would have earned in interest vis-à-vis the insurance company. My position, the government's position, is that the loss here is that he failed to discourage the profits that he made by self-dealing in the assets of the trust corpus. That is a very different case. Breyer, what about the other argument? I just don't want you to leave without addressing the other argument. The other argument. In your brief, you talk about, quote, ''learned hand'' and say it means, if it doesn't mean a deliberate malversation, said learned hand, then it must be the same as fraud or embezzlement. So I will go look up malversation as soon as I return to my office. And I'll get that. Now, the other argument was, yes, fine, a loss, two, done deliberately, but with an innocent state of mind because he didn't understand the law. Justice Kennedy quoted fraud, a debt from this Court, that fraud in bankruptcy for purposes of this provision requires some degree of moral turpitude. That suggests that you aren't innocent in respect to knowledge that it's against the law. What about that? My response to that is that the Neal v. Clark decision that's being discussed here is one we have, and we discussed this in our brief, is distinguishable in part because its current descendant is actually not this provision. It is not this reference to fraud. It is the exception from discharge in paragraph A-2a. And what makes this different is that this is fraud in a fiduciary capacity, which was not true in the context of Neal v. Clark, and that's something the Court said at the time, that because it did not actually have the limitation to the fiduciary context, they needed to infer some type of limitation. They inferred it, the Court inferred it, from embezzlement. And so going back to Justice Kennedy's question, the way Congress has dealt with that is that it has put actual fraud in A-2a, and here it has grouped fraud with defalcation in a fiduciary capacity, and therefore it includes the type of limitation that the Court was trying to impose in Neal v. Clark. We don't think that there's any inherent mens rea in defalcation and perjury. Could you explain what you mean before your time expires in footnote 18? I understood your argument until I got there, but then you said that there was no particular mental state required. And then in footnote 18 you said, well, there may be cases where a particular mental state is required. Well, I think when it gets further away from the heartland definition of defalcation, which doesn't — which, as we discussed in this Court's 1844 decision in Chapman and in the 1841 bankruptcy law, the defalcation was equated with self-dealing in trust assets, and so we think that's the heart of defalcation. As you move away from that particular type of fiduciary breach, and if you move away from there, it may become more relevant whether there is — Well, how — where are courts supposed to look to find out what is the border between the heartland of defalcation and the headlands of defalcation or whatever else? Well, if — to be fair, the dictionary definitions are broad enough to include other types of fiduciary breaches, but it's not clear that that means that defalcation needs to be doing all the work here of potentially putting limits on the scope of the exception. And so if you look at the Ninth Circuit, for instance, the way it has handled this is it has recognized, as we do, that defalcation can be innocent, and — but it has concluded that the essence of defalcation is the failure to account for or to produce funds, and therefore, it wouldn't be something that would just be garden-variety mismanagement of the assets. Well, why not? I mean, it's a violation of the trustee's responsibility when he makes a negligent investment — well, of the funds, right? And so he doesn't turn over as much money as he would be turned over. It's a defalcation. Well, I — we certainly do think that that may well be the ultimate answer. We think that would be further away from the core of defalcation, but it's not this case. So we would urge the Court to affirm. Thank you, counsel. Mr. Byrne, you have 5 minutes left. Thank you, Your Honor. Sotomayor, is it your position that he couldn't have invested this? Let's assume that he knew — that he knew. Assuming he knew, Your Honor, he could — his position is, and it was — it was true, his position in the State court was, that he could have invested this, but — As a trustee for the trust. As a trustee for the trust. Okay.  Well, Your Honor, that's — Because if he could invest it for the trust, why isn't the loss — isn't it a loss for the trust that he took this opportunity away from the trust? Well, Your Honor, the course of the Illinois court never decided whether he was right about whether he could actually invest the money, other than as specified. Let's assume he could have. So if you assume he could have, then it's a — Then why isn't the loss of opportunity? Well, Your Honor, the — the trust instrument, I think you'll see, does not expressly authorize him to do that. He's making — he was making an argument — Let's assume his argument that he could. But if the argument is, or if the trust provided that he could invest in other things and made imprudent investments, then there could be a loss to the trust, and then his mental state would be — Then we have to go back to — to the first issue, whether a mental state is required or not. That's correct, Your Honor. Now, to respond to a few things said by Respondent and by the solicitor, the Petitioner actually did put into the record, when he opposed summary judgment pro se in the Bankruptcy Court, all of his evidence about what he — what should have been done with the money that was in the constructive trust, what should have been done with the property that was in the constructive trust during that period, he put that in — in evidence. It's in the record. And his repeated pleas that the assets be sold to pay the judgment are reflected by that. The Respondent relied entirely on the two Illinois court orders and put in no evidence other than the original pleadings, if they are evidence in the — in the Illinois case. So there is that question about the record, and the Petitioner did track what — what his efforts were to try to persuade the trustee to consent to the sale of the property. And it's interesting, the constructive trust, of course, was imposed on the properties that were acquired with loans two and three. So if there were any profit from the loans, they would have been caught in those properties. And eventually, of course, they were not sold. But to determine the amount of the loss here, a trial would be needed, and that's really why we were hoping the Court will give us a — give Mr. Bullock a day in court here to establish under the proper legal standard what any loss really was, if there was one. And it was said earlier that a conflict of interest itself is a defalcation, but not if there's no loss. That's just — that's entirely inconsistent with the other exceptions to discharge in the Code. Mr. Gannon read the — noted that the dictionary definitions evolved over time, but the 1856 definition of defalcation from Beauvier's Law Dictionary that's quoted in the government's brief actually still reflects the idea that — or the definition that a defalcation is the act of a defaulter, and a defaulter is defined as one who fails in making his accounts correct. So by 1856, years after the first enactment of defalcation, that was still the definition that was prevailing in the day, at least according to that dictionary and according to the others that — that we cite earlier. Petitioner here made a mistake in judgment. There was never any finding of dishonesty on his part. There was never any finding that he acted with a malicious intent. In fact, there was a finding that he acted with no apparent malicious intent in the Illinois courts. This question is one of dischargeability, and his debt is really what bankruptcy is for. It's for a fresh start for an honest but unfortunate debtor. Unless the Court has any further questions, that concludes my argument. Roberts. Thank you, counsel. The case is submitted.